The judgment of the Court of Common Pleas is, therefore, reversed, and, proceeding to do what the trial court should have done, this court renders final judgment for the defendants.

*Judgment reversed.*

SKEEL, P. J., HURD and KOVACHY, JJ., concur.

THE STATE OF OHIO, APPELLEE, *v.* BRYANT, APPELLANT.

453

(No. 2413—Decided May 28, 1957.)

*Mr. Mathias H. Heck,* prosecuting attorney, *Mr. John R. Hoover* and *Mr. Herbert M. Jacobson,* for appellee.
*Mr. Clarence J. Stewart,* for appellant.

HORNBECK, P. J.   This is an appeal from a sentence and judgment of the Common Pleas Court upon the conviction of defendant by a verdict of a jury of murder in the first degree with a recommendation of mercy.

Four errors are assigned:
1. Failure to sustain defendant's motion for a mistrial.
2. Prejudice on the part of the jury which precluded defendant having a fair trial.
3. Error in the general charge of the court.
4. The verdict of the jury is manifestly against the weight of the evidence.

The first assignment is that the trial court erred in not granting defendant's motion for mistrial "on the grounds of extreme excitable emotions on the part of the decedent's wife, Mrs. Barner, to the extent that she left the courtroom * * *."

Appellant argues that it was irregular for the prosecuting attorney to have decedent's wife seated at the counsel table as the representative of the state.  He further calls attention to the occurrence upon which the motion for new trial was grounded.

An examination of the record discloses no emotion on the part of the decedent's wife, other than that which normally might follow when the shirt which her husband wore at the time he was killed was produced and exhibited to the jury.  She made no statement or demonstration, and the trial judge, ob-

serving her emotion, asked her to withdraw, which she, in charge of the bailiff, did. The experienced trial judge, immediately upon the occurrence, cautioned the jury respecting the matter of sympathy as it affected its deliberation. The judge evidently found that no prejudice resulted from the happening, and we find no reason to question his judgment.

It was the province of the prosecuting attorney to make the choice of the person to assist him in the development of the case for the state. There is nothing to indicate bad faith on the part of the prosecutor in the selection made, or that the presence of decedent's wife was used in any improper manner. Decedent's wife testified and, according to the record, was excused at times during the reception of her testimony. It may be that her appearance and her testimony evoked sympathy, as it naturally would, on the part of the jury. Such developments as we have been discussing are inevitable in the trial of criminal cases where the facts developed tend to stir the emotions.

The second assignment of error is that the defendant was precluded from having a fair trial because of prejudice against him on the part of the jury.

The developments recited in the brief of appellant, defendant below, and appearing in the record, in no wise suggest comment of any juror in reference to any occurrence to which the trial judge's attention was directed, which intimates any feeling of the jury or any member thereof for or against the defendant. The fact, that one juror said that the person who had been attempting to observe the jury in its deliberations had been during the trial talking to the attorney for the defense, affords no inference of ill feeling against the attorney or his client. The result of the conference between the trial judge and the foreman of the jury was to direct attention to the fact that somebody seemed to have been eavesdropping on the jury while in session considering the case. As soon as the judge realized the situation, he took adequate steps to prevent a recurrence of the objectionable conduct.

The third assignment is that the court erred in its charge to the jury.

The subject matter of the charge to which this assignment is directed is:

"It will be necessary for you to keep in mind that the state must establish that Lee Bryant's state of mind as to intention, purpose, malice, premeditation and deliberation must have been a state of mind directed at and toward Thomas Barner and not of his state of mind toward Straitiff. If you find that he intended to kill Donald Straitiff and if you find that he premeditated and deliberated upon such intention and maliciously and purposely attempted to carry out such intent, such finding on your part cannot be considered by you as proof that defendant entertained any such intent, purpose, malice, premeditation or deliberation toward Thomas Barner, *except as the court will point out hereafter in its charge.*" (Emphasis ours.)

The charge which appellant says should have been given is identical with the foregoing with the omission of that part thereof which is italicized.

We do not find any statement in the general charge which constitutes any exception to the instruction as given. So that, to all intents, the charge as given is in import the same as that which appellant now suggests. If counsel for the defendant believed that the court had pointed out no exception to the charge, as given, request should have been seasonably made for the correction. *State* v. *Tudor*, 154 Ohio St., 249, 95 N. E. (2d), 385.

The fourth assignment of error is that the verdict of the jury is manifestly against the weight of the evidence.

We have carefully read this record in its entirety. Upon the testimony of witnesses for the state every element of first-degree murder was established by the requisite degree of proof. Indeed, there was no reasonable construction that could have been placed upon the testimony in behalf of the prosecution other than that which the jury placed upon it. It is most unusual that the state had available two eye witnesses to the killing. From the observation of those two disinterested witnesses, every element of purposeful killing, deliberation and premeditation must be inferred.

The trial judge submitted to the jury the specific defense asserted, self-defense, but the evidence to establish it was at such variance with the physical facts which were not in dispute and the testimony of disinterested witnesses, and so improbable in the situation developed, as to cast grave doubt upon its validity.

The defendant had spent many hours at the bar of the Hi-Lee Cafe drinking beer and, he says, vodka, although this is denied by the bartender. During the progress of a baseball game between Milwaukee and Cincinnati, defendant and Straitiff had a quarrel resulting by reason of an attempted bet between them on the game. This quarrel resulted in bitter language between them and possibly some threats of personal violence, but none was attempted or consummated. There was no difficulty between defendant and Barner of any considerable consequence. After the quarrel, and evidently laboring under the anger provoked thereby, the defendant left the cafe, went to his home, secured a loaded rifle, and hurried back toward the cafe, evidently in search of Straitiff whom he did not find. Barner, leaving the cafe, went out near an alley to the rear thereof and there was accosted by defendant who held him at the point of a rifle, aimed at his heart for an appreciable length of time. One witness said the length of time was several seconds; another said that the length of such time was during all the time after he (the witness) had observed the defendant menacing Barner leaving to place a phone call, placing it and until after his return. During this time the defendant held Barner at the point of the rifle. Both witnesses say Barner, with his hands at his side, made no move whatever save to turn his head. While defendant was menacing Barner, his wife implored him not to shoot and to give the gun to Curtis who was the observer within two feet of the parties. Curtis also requested defendant to yield the gun to him and not to shoot, and warned him of the effect that might result. Notwithstanding the time the defendant had to reflect and the requests made to him, he expressed a purpose with a defamatory expression to shoot Barner through the heart, which he did. Thereafter, he moved into the bar and again expressed satisfaction with what he had purposely accomplished. After his arrest and on the way to Safety Headquarters, on several occasions he expressed satisfaction with what he had accomplished and indicated a purpose to get Straitiff also.

All the witnesses for the state say that the defendant was calm after the shooting.

This testimony, if believed by the jury, left little opportunity for it to do more than to extend mercy.

From the meager evidence on the subject, it appears that the defendant was a kind and indulgent husband and father, but his killing of Barner was senseless, unprovoked and unjustified and difficult to understand.

Counsel for appellant has made the very best presentation of an appeal which upon this record is without merit. Defendant was accorded every consideration to which he was entitled and had a fair trial.

The judgment is affirmed.

*Judgment affirmed.*

WISEMAN and CRAWFORD, JJ., concur.